59 CCPA

**Application of Charles R. PRATT and Robert D. Smith.**

**Patent Appeal No. 8565.**

United States Court of Customs and Patent Appeals.

March 9, 1972.

Walter S. Zebrowski, Big Flats, N. Y., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 11 and 15–27 in appellants' application[1] as ob-

---

1. Application Serial No. 560,593, filed June 27, 1966.

vious under 35 U.S.C. § 103 in view of the prior art.

## THE INVENTION

The invention relates to enclosing or encapsulating electrical devices such as integrated circuits and semiconductor devices to provide mechanical and environmental protection. In appellants' application, Fig. 1 is a plan view of a thin film microcircuit unit and Fig. 5 a perspective view of that unit encapsulated in accordance with one form of the invention:

Fig. 1

[A5330]

Fig. 5

The unit 10 includes terminals 12, 14, 16 and 18 interconnected in circuit with a capacitor 22, a resistor 20 and semiconductor chips 26 and 28, all of which are supported by a substrate 24 of any suitable dielectric material such as a ceramic. In encapsulating the unit 10, a layer of synthetic resin 30 is applied over the top side of the substrate and its supported circuitry, leaving the contact plates 12, 14, 16 and 18 exposed for making subsequent external connections. A "thin sheet 32 of substantially moisture impervious material such as glass or ceramic" is placed on the layer 30. The resin 30 is then cured to bond the unit and sheet into the unitary structure of Fig. 5.

In a modified embodiment, the circuit elements of the unit are coated with a synthetic resin before the full layer of resin is applied over the entire top of the unit. The additional coating may be "very chemically compatible" with, and afford moisture protection to, the device, while the outer layer may have greater physical strength. Optionally, the laminated assembly may be further encapsulated as by placing it in a mold or shell and casting a synthetic resin about it ("potting" it) while leaving the terminal leads exposed.

All but two of the claims are to the article with claim 19 defining the most comprehensive combination:

An enclosed electrical circuit comprising

an electrical circuit formed on a dielectric substrate embodying at least one electrical component and having terminals for electrical connection thereto,

a coating of a first synthetic resin applied only over said electrical component and the surrounding surface of said substrate adjacent to said

component so as to cover said component,

a layer of a second synthetic resin applied over said substrate, circuit, and first synthetic resin so that said terminals of said circuit are exposed,

a thin sheet of glass bonded to said layer of synthetic resin,

leads attached to said terminals, and

a coating of synthetic resin applied about the laminated structure so formed so that only said terminals extend therebeyond.

Method claim 26 reads as follows:

The method of encapsulating a thin film electrical circuit comprising the steps of

providing an electrical circuit formed on a dielectric substrate, said circuit embodying at least one electrical component and having terminals for electrical connection thereto,

applying a coating of a first synthetic resin only over said electrical component and the surrounding surface of said substrate adjacent said component so as to cover said component,

applying a layer of a second synthetic resin over a selected portion of said circuit, said first resin, and said substrate leaving said terminals exposed,

disposing a thin sheet of substantially moisture impervious material over said resin, and

curing the resin of said layer so that it is bonded to said circuit, said first resin, said substrate, and said sheet.

Claim 27 depends on claim 26 and further requires that the first resin coating be cured before the second resin coating is applied.

2. U.S. Patent No. 3,325,586, granted June 13, 1967, on an application filed March 5, 1963.

3. U.S. Patent No. 3,254,282, granted May 31, 1966, on an application filed December 18, 1963.

## THE REJECTION

All claims stand rejected as obvious in view of Suddick,[2] West[3] and Merrin et al. (Merrin).[4] Suddick discloses packaging or encapsulating an electric circuit unit which is deposited on a base plate or substrate that may be of ceramic material. A layer of sealing material is deposited over the circuit unit and base, leaving the terminals exposed. Then, a cover plate, which may be of ceramic material, is placed over the layer. The assembly is next heated to the sealing temperature of the sealing material so as to bond the elements together into a unitary package.

West describes encapsulation of an electric capacitor of the dry type in which one electrode is a thin outer layer of metal deposited on an oxide film. The capacitor is first coated with a yieldable silicone elastomer which serves as a buffer and then a coating of synthetic resin material, such as an epoxy resin, is applied.

The Merrin publication discloses encapsulating a circuit module by covering electrical components mounted on a ceramic substrate with a "soft, flexible coating," such as "a cured silicone rubber," and then covering entire top side of the module with an outer layer of aluminum phosphate cement.

The examiner took the position that, while Suddick specifically discloses use of a ground glass as the sealing material between his ceramic substrate and ceramic outer plate, the use of other materials for that purpose is "strongly inferred" therein. Noting further that epoxy resins were conventional and "well known encapsulating and sealing materials," as shown in West, the examiner deemed it obvious to use a synthetic resin as the sealing material in Suddick. He regarded providing Suddick's device

4. IBM Technical Disclosure Bulletin, Vol. 7, No. 10, p. 859 (March, 1965).

with an additional outer coating, as by "potting" it in a shell, to be obvious because it was notoriously old to protect devices by that technique.

With regard to the modification including a coating of a first synthetic resin applied over the individual components, the examiner held that West and Merrin made it obvious to apply such a conformal coating to Suddick's unit as modified to use a synthetic resin for sealing or bonding. He further considered the method recited in claims 26 and 27 to define an obvious method of making the structure found obvious in view of the references. The examiner also rejected claims 26 and 27 under 35 U.S. C. § 112, but in the view we take of the case, it is unnecessary to reach that rejection.

In affirming, the board essentially adopted the reasons for rejection set forth by the examiner as its own.

## OPINION

It is clear from appellants' arguments that the principal issue is whether the use of a synthetic resin as the sealing material uniting the base plate of Suddick's electrical device with the overlying cover plate would have been obvious. We find the record fully supports the conclusion that it would. Thus, Suddick's first mention of powdered glass is in an expression beginning "[w]here this sealing material is powdered glass, for example" and the patent later uses the phrase "[w]here glass is used." After then describing powdered glasses more specifically, Suddick states: "Of course, other materials than these glasses may be used, provided that the two requisites of proper expansion characteristics and proper sealing temperature are met." Those statements invite choice of a sealing material with powdered glass being only exemplary. Synthetic resins such as epoxy resins could

obviously be selected since they were "well known encapsulating and sealing materials."[5] Such use clearly indicates that synthetic resins were available with expansion characteristics compatible with electrical devices and with curing temperatures low enough to preclude damage to such devices.

Appellants argue that their synthetic resin merely forms a bond between the substrate and the moisture impervious plate while the function of the sealing material in Suddick is merely to act as an encapsulent. This argument is without merit because both appellants' resin and Suddick's sealing material perform exactly the same functions. Suddick clearly discloses that his sealing material acts both to provide an environmental seal and to bind the top and bottom ceramic plates together into a unitary package. Further, it is apparent that appellants' bonding material would also function to some degree as a moisture barrier. West, for example, states that his epoxy resin "serves primarily to provide protection to the encapsulated unit against mechanical shock, *moisture* and *other environmental effects* * * *." (Emphasis added.) At any rate, none of the instant claims preclude the use of a synthetic resin which is impervious to moisture.

With respect to the use of a first partial coating in addition to the full layer of resin between the substrate and the impervious plate, the Patent Office holding that it would have been obvious to so modify Suddick finds firm support in the references. Suddick suggests that in some situations it is preferable to have a buffer layer of insulating material separating the surface of the semiconductor wafer from the sealing material. West envelops his capacitors in a protective layer of yieldable elastomeric material and then surrounds this protective layer with "an outer rigid coating of a hardened, moisture impervious, shock-re-

---

5. The quoted characterization by the examiner is unquestioned by appellants. If any further support be needed, it is provided by the structure disclosed by West and by West's statement that capacitors "have been encapsulated in synthetic resin materials, particularly epoxy resin compounds * * *."

sistant, synthetic resin material." Confining the first layer of resin to the electrical components of Suddick while the second layer covers the entire base or substrate is further suggested by the Merrin construction.

As the examiner pointed out, the optional overall coating or "potting" of the already encapsulated devices amounts to providing an additional covering for additional protection, a choice which would certainly seem to have been readily apparent to a person having ordinary skill in the art.

As to the method claims, the process steps recited are shown to be obvious by the same references, and for substantially the same reasons, as the article itself. In our opinion the limitation in claim 27 requiring the curing of the first layer of resin before the second layer is applied is effectively taught by both West and Merrin.

For the reasons stated above, the decision of the board is affirmed.

Affirmed.